UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GINA HAUTUR and CAROL GURNISH,
 Individually and on Behalf of All Other
 Persons Similarly Situated,

                                    Plaintiffs,

                v.

KMART CORPORATION,

                                    Defendant.

**REPORT AND
RECOMMENDATION**

15-CV-267A

## I.  INTRODUCTION

Plaintiffs Gina Hautur and Carol Gurnish ("Hautur" and "Gurnish") tried to

join a collective action in New Jersey brought under the Fair Labor Standards Act

of 1938 ("FLSA"), 29 U.S.C. §§ 201–219.  The plaintiffs in the collective action

accused Kmart Corporation ("Kmart") of intentionally classifying hourly

employees as managerial employees to avoid paying overtime.  Hautur and

Gurnish missed the deadline to join the collective action in New Jersey and

commenced their own FLSA collective action here.  Kmart wants this case

dismissed as an improper duplicative action under the "first-filed rule."  Kmart has

filed a corresponding motion to dismiss under Rule 12(b)(6) of the Federal Rules

of Civil Procedure.  (Dkt. No. 9.)  Hautur and Gurnish counter that the first-filed

rule does not apply under the circumstances here and that the FLSA does not prohibit collective actions in different districts against the same defendant.

The Hon. Richard J. Arcara referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 10.)  This Court has deemed the motion to dismiss submitted on papers under Rule 78(b).  For the reasons below, the Court respectfully recommends denying the motion.  The Court also recommends certifying issues for interlocutory appeal as explained below.

## II.  BACKGROUND

### A. The New Jersey Case

Understanding the present case and the issues that the parties have raised is a little easier in the context of a case that has been proceeding in the United States District Court for the District of New Jersey.  On July 3, 2013, Amy Fischer and Morrison Omoruyi filed a collective action against Kmart in the District of New Jersey.  (*See generally Fischer v. Kmart Holding Corp.*, No. 3:13-cv-04116-AET-DEA (D.N.J.) (the "New Jersey Case").)  The plaintiffs in the New Jersey Case since filed several amended complaints; the operative complaint right now appears to be the third amended complaint that was filed on November 19, 2014.  (N.J. Case Dkt. No. 96.)  The essence of the New Jersey Case is unpaid overtime.  The plaintiffs, individually and on behalf of a proposed class of Kmart employees, assert that they had no managerial responsibilities in their jobs and that they performed tasks typical of hourly employees: "working the cash

2

registers, stocking shelves, cleaning the store, assisting customers, building displays, unpacking merchandise, and unloading trucks." (*Id.* at 7.) Nonetheless, according to the plaintiffs, Kmart classified them as managerial employees to exempt them from federal and state wage laws and thus to avoid paying them overtime. The plaintiffs have asserted that they worked as much as 60–70 hours per week but were paid for only 40. The New Jersey Case contains four claims. The first claim contains an allegation that Kmart violated various provisions of the FLSA. The other three claims contain allegations that Kmart violated analogous New Jersey and Maryland state laws with respect to unpaid overtime. The plaintiffs in the New Jersey Case also asserted three classes: a federal FLSA class under 29 U.S.C. § 216(b); and two state classes, one for New Jersey and one for Maryland law, under Rule 23.

The New Jersey Case has progressed far enough to reach three accomplishments as of this writing. As noted above, the plaintiffs have amended the original complaint three times. The Court will not perform an exact redline comparison of all four complaints; generally, the amendments appear to have fleshed out details of the plaintiffs' allegations while maintaining the core contention that Kmart manipulated many employees' status to avoid paying overtime. From a review of the docket sheet in the New Jersey Case, the Court infers that discovery is under way. Finally, a conditional class certification has

occurred in the New Jersey Case.  On April 30, 2014, the plaintiffs filed a motion

for a conditional class certification under the FLSA.  (N.J. Case Dkt. No. 54.)  The

plaintiffs did not make a similar request for their proposed New Jersey and

Maryland classes under Rule 23 and did not mention those classes in the motion.

Kmart opposed the motion without referring to the proposed state classes, either.

(*See generally* N.J. Case Dkt. No. 71.)  District Judge Anne E. Thompson

granted conditional class certification under the FLSA, for Kmart employees who

did not have arbitration agreements in their employment contracts.  (N.J. Case

Dkt. Nos. 80, 81.)

From there, the New Jersey Case moved forward to various proceedings

concerning issuing notices to prospective members of the conditional class.

Judge Thompson settled on the notice that prospective class members would

receive after hearing from the parties.  (N.J. Case Dkt. No. 87.)  The Court

cannot find where in the New Jersey Case docket a deadline for joining was set,

but the motion papers for this case seem to indicate that Judge Thompson set a

deadline of December 20, 2014.  That is, any Kmart employees who wanted to

opt into the New Jersey Case needed to mail notice of their intent to do so with a

postmark of no later than December 20, 2014.  Hautur and Gurnish submitted

late notices, and Kmart refused to accept them.  The docket for the New Jersey

Case does not appear to contain any motion or other formal request to Judge

Thompson for acceptance of the late notice.  Hautur and Gurnish ultimately

withdrew their notices and exited the New Jersey Case on March 16, 2015.  (N.J.

Case Dkt. No. 123.)

### B. This Case

On March 27, 2015, Hautur and Gurnish commenced this case.  This case

also contains allegations that Kmart manipulated the exempt or non-exempt

status of employees to avoid paying them more than 40 hours per week.  The

complaint in this case, like the one in the New Jersey Case, also contains four

claims.  In the first claim, Hautur and Gurnish allege a failure to pay overtime in

violation of the FLSA.  The remaining three claims alleged similar violations

under analogous New York and Ohio laws.  To demonstrate the similarities

between the New Jersey Case and this case, the following table places a sample

of the allegations from each case side-by-side:

| N.J. Case, Dkt. No. 96 | This Case, Dkt. No. 1 |
| --- | --- |
| Defendant maintains control, oversight, and discretion over the operation of its retail stores, including its employment practices with respect to Plaintiffs, the Collective Action Members, and the members of the State Classes.  (¶ 27.) | Defendant maintains control, oversight, and discretion over the operation of its retail stores, including its employment practices with respect to Plaintiff, the Collective Action Members, members of the Ohio State Law Classes, and members of the NYLL Class.  (¶ 29.) |

| | |
|---|---|
| Consistent with Defendant's policy, pattern and/or practice, Plaintiffs, the Collective Action Members, and the members of the State Classes regularly worked in excess of 40 hours per workweek without being paid overtime wages, in violation of the FLSA, NJWHL, MWHL, and MWPCL.  (¶ 29.) | Consistent with Defendant's policy, pattern and/or practice, Plaintiffs', the Collective Action Members', members of the Ohio State Law Classes', and members of the NYLL Class' work regularly worked in excess of 40 hours per workweek without being paid overtime wages, in violation of the FLSA, the OMFWSA, and the NYLL.  (¶ 31.) |
| Throughout the Collective Action and state Class Periods, the primary job duties of Plaintiffs and all members of the Collective Action and the State Classes did not include: hiring, firing, disciplining, or directing the work of other employees, and exercising meaningful independent judgment and discretion.  The primary job duties of Plaintiffs and all members of the Collective Action and the State Classes did not materially differ from the duties of non-exempt hourly paid employees. Their primary duties were manual in nature. The performance of manual labor and non-exempt duties occupied the majority of Plaintiffs' working hours.  Pursuant to a centralized, company-wide policy, pattern and/or practice, Kmart classified all Assistants and other similarly situated current and former employees holding comparable | Throughout the Collective Action and State Class Periods, the primary job duties of Plaintiffs and all members of the Collective Action, the Ohio State Law Classes, and the NYLL Class did not include: hiring, firing, disciplining, or directing the work of other employees, and exercising meaningful independent judgment and discretion.  The primary job duties of Plaintiffs, all members of the Collective Action, the members of the Ohio State Law Classes, and the members of the NYLL Class did not materially differ from the duties of non-exempt hourly paid employees. Their primary duties were manual in nature.  The performance of manual labor and non-exempt duties occupied the majority of Plaintiffs' working hours.  Pursuant to a centralized, company-wide policy, pattern and/or practice, Kmart classified all Assistants and other |

| | |
|---|---|
| positions but different titles, as exempt from coverage of the overtime provisions of the FLSA, the NJWHL, the MWHL, and the MWPCL.  (¶¶ 36–38.) | similarly situated current and former employees holding comparable positions but different titles, as exempt from coverage of the overtime provisions of the FLSA, the OMFWSA, and the NYLL.  (¶¶ 38–40.) |
| Defendant knew, by virtue of the fact that its Store Managers and District Managers (as its authorized agents) actually saw the Plaintiffs and other similarly situated Assistants perform primarily manual labor and non-exempt duties, that a result of the underfunded labor budgets was to limit the amount of money available to pay non-exempt employees to perform such work.  Defendant knew that Plaintiffs and other similarly situated Assistants were not performing activities that would suffice to make their actual job duties comply with any FLSA, NJWHL, MWHL, or MWPCL exemption and, inasmuch as Defendant is a substantial corporate entity aware of its obligations under the FLSA, NJWHL, MWHL and MWPCL, it, accordingly, acted willfully or recklessly in failing to classify Plaintiffs and other similarly situated Assistants as non-exempt employees.  (¶ 41.) | Defendant knew, by virtue of the fact that its Store Managers and District Managers (as its authorized agents) actually saw the Plaintiffs and other similarly situated Assistants perform primarily manual labor and non-exempt duties, that a result of the underfunded labor budgets was to limit the amount of money available to pay non-exempt employees to perform such work.  Defendant knew that Plaintiff and other similarly situated Assistants were not performing activities that would suffice to make their actual job duties comply with any FLSA, OMFWSA, or NYLL exemption and, inasmuch as Defendant is a substantial corporate entity aware of its obligations under the FLSA, OMFWSA and NYLL, it, accordingly, acted willfully or recklessly in failing to classify Plaintiff and other similarly situated Assistants as non-exempt employees.  (¶ 43.) |
| Defendant's willful violations of the FLSA, NJWHL, MWHL, and | Defendant's willful violations of the FLSA, OMFWSA, Section 34a, and |

7

| | |
|---|---|
| MWPCL are further demonstrated by the fact that during the course of the Collective Action and Class Action Periods and continuing to the present, Defendant failed to maintain accurate and sufficient time records for Plaintiffs and the members of the Collective Action and State Classes.  Defendant acted recklessly or in willful disregard of the FLSA, NJWHL, MWHL, and MWPCL by instituting a policy and/or practice that did not allow Plaintiffs to record all hours worked.  (¶ 45.) | the NYLL are further demonstrated by the fact that during the course of the Collective Action and Class Action Periods and continuing to the present, Defendant failed to maintain accurate and sufficient time records for Plaintiffs, members of the Collective Action, members of the Ohio State Law Classes, and members of the NYLL Class. Defendant acted recklessly or in willful disregard of the FLSA, OMFWSA, Section 34a, and the NYLL by instituting a policy and/or practice that did not allow Plaintiff to record all hours worked.  (¶ 47.) |

Kmart filed the pending motion to dismiss on May 29, 2015.  Kmart begins its argument by pointing out that "Hautur and Gurnish were part of the *Fischer* putative collective action [*i.e.*, the New Jersey Case], received notice, elected to opt-in, but were dismissed from the collective action because they did not file their consent forms within the court-ordered deadline."  (Dkt. No. 8 at 6.)  Kmart then notes that the New Jersey Case and this case are "parallel" cases because they make the same allegations against it and seek the same relief.  "As a result of these purported violations, both the Plaintiffs in *Fischer* and this Action seek to recover overtime compensation, liquidated damages, reasonable attorneys' fees and litigation costs on behalf of themselves and all current and former Kmart

Assistant managers and similarly situated current and former employees holding comparable positions but different titles who were employed by Kmart during the three years prior to the commencement of each respective suit." (*Id.* at 8–9.) The parallel nature of the New Jersey Case and this case warrant application of the "first-filed" rule, according to Kmart.  Under the first-filed rule, Kmart argues that the New Jersey Case and this case are substantially similar with the potential for the plaintiffs in each case to overlap.  Kmart argues further that dismissal would avoid problems that arise with concurrent litigation, such as duplicate efforts by the parties and inconsistent results between the two courts.  As an example of a potential problem, Kmart cites the issue of arbitration that Judge Thompson resolved in the New Jersey Case; Kmart sees no reason why Hautur and Gurnish should have a chance to litigate the applicability of arbitration agreements again, for themselves or for anyone who might join a class in this case.  Dismissal will cause no prejudice to Hautur, Gurnish, or any other employees who did not join the New Jersey Case and might have joined this one, according to Kmart, because these employees retain the ability to bring individual FLSA actions.  In the alternative, Kmart requests that the Court limit this case to potential plaintiffs who did not receive notice in the New Jersey Case.

Hautur and Gurnish oppose Kmart's motion for several reasons. According to them, the first-filed rule evolved as a way to manage only what

some courts have called "mirror-image" cases, cases in which substantially similar parties have raced to different courthouses for rival adjudication of substantially similar issues in their preferred venue.  Hautur and Gurnish argue that this case is not in competition with the New Jersey Case.  The plaintiffs in each case will not be the same, and the allegations in the complaint include the assertion that "Kmart did not perform a *person-by-person* analysis of the job duties of Assistants when making the decision to classify all of them uniformly as exempt from the overtime protections of the FLSA, the OMFWSA, and the NYLL."  (Dkt. No. 1 at 8 (emphasis added).)  Additionally, Hautur and Gurnish have emphasized that any class that the Court certified here would be limited to Kmart employees who started work after notice went out in the New Jersey Case.  As for similarity of issues, Hautur and Gurnish briefly address the issue of arbitration and note that ongoing proceedings before the National Labor Relations Board may invalidate Kmart's arbitration agreement.  With the plaintiffs in the two cases being different, and the possibility of changed circumstances regarding at least some issues, Hautur and Gurnish conclude that any similarity of other issues does not suffice to invoke the first-filed rule.  Hautur and Gurnish also argue that nothing in the FLSA prohibits multiple collective actions and that the Court should avoid rewarding Kmart for shutting them out of the New Jersey Case and then foreclosing any other collective litigation.

10

Other than a brief discussion of whether the state class claims in the complaint affect this case's similarity to the New Jersey Case, the parties have made no arguments regarding the state class claims or Rule 23.  The Court accordingly will focus on the federal collective claim under the FLSA.

## III. DISCUSSION

### A. Motions to Dismiss Generally

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  Court assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted).  "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of

recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (Arcara, *J.*) (internal quotation marks and citation omitted).

### B. Does the First-Filed Rule Apply?

The pending motion rests heavily, if not entirely, on the application of the first-filed rule to an FLSA collective action.  While reviewing the parties' motion papers, the Court noticed that neither side cited to a single Second Circuit or other Court of Appeals case that applied the first-filed rule to the scenario presented here.  District Court cases that have weighed in have reached conflicting conclusions.  In the absence of appellate guidance, a brief review of the origin and development of the first-filed rule should help uncover the propriety of using that rule in a new context.  The review that follows below is not an all-inclusive history but covers major cases that have received frequent citation.

Some early commentary on principles related to the first-filed rule can be found in *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d Cir. 1941).  In *Crosley*, a corporation holding radio and television patents sued an electronics manufacturer in the Southern District of Ohio for patent infringement.  While the Ohio litigation began running its course, the manufacturer sued the patent holder in the District of Delaware for a declaratory judgment finding the patents invalid and finding no infringement.  *See id.* at 926–27.  The Delaware Court refused the

12

manufacturer's request for an injunction restraining the patent holder from proceeding with its Ohio litigation until the Delaware litigation ended.  The manufacturer appealed to the Third Circuit, which summarized the issue presented succinctly.  "We are thus called upon to determine whether a United States district court which first obtains jurisdiction of the parties and issues may, and under the circumstances of this case should, enjoin proceedings involving the same issues and parties begun thereafter in another United States district court.  To put it in other words, does a district court have the power to issue such an injunction and if it does, was it an abuse of discretion to deny such an injunction under the circumstances of this case?"  *Id.* at 927.  To answer the question, the Third Circuit reviewed several older equity cases from the English Court of Chancery.  The English cases all had in common a scenario in which one party had obtained an equitable decree for some sort of specific performance by a second party, the second party wanted to challenge the decree, but the first party simultaneously commenced an action at law for damages for failure to perform.  *See id.* at 927–28 (citations omitted).  In each case, the English Court of Chancery issued an injunction barring the first party from proceeding with the action at law.  "We conclude that the English Court of Chancery had the power at the time our government was established to enjoin parties before it from proceeding in another court in a controversy involving the

13

same issues, and that the federal district courts, as courts of equity, have similar power." *Id.* at 928.  The Third Circuit also drew support from the Supreme Court case of *Steelman v. All Continent Corp.*, 301 U.S. 278 (1937).  "In that case the district court for the district of New Jersey, sitting as a court of bankruptcy, in the exercise of the equitable powers of such a court enjoined the prosecution against the trustee of the bankrupt of an equity suit in the district court for the Eastern District of Pennsylvania.  The injunction was allowed on the ground that the Pennsylvania suit, if pressed to a decree, might thwart an inquiry into frauds charged against the bankrupt." *Id.* at 928.  The Third Circuit ultimately reversed the Delaware Court and remanded with instructions to grant the manufacturer's request for an injunction.  "The intent of the Declaratory Judgment Act is to enable an alleged infringer to avoid a multiplicity of suits by the patent owner. When the district court of the domicile of a patent owner has been asked by an infringer to determine by declaratory judgment the issues of the patent's validity and infringement, it would neutralize the beneficial effect of the Declaratory Judgment Act as well as impose an unwarranted burden upon the federal judiciary, to permit the patent owner thereafter to prosecute infringement suits in other district courts against the same infringer." *Id.* at 930.

Other cases further demonstrate that the reciprocity of claims peculiar to patent litigation heavily influenced the development of the first-filed rule.  In

14

*Remington Prods. Corp. v. Am. Aerovap*, 192 F.2d 872 (2d Cir. 1951), a manufacturer of an insecticide vaporizer sued a patent holder (and rival manufacturer) in the Southern District of New York "for a declaratory judgment holding the above patents invalid or not infringed and to recover damages for unfair competition." *Id.* at 873. Soon after the New York case began, the patent holder sued users of the manufacturer's product in the Southern District of Florida for patent infringement. The District Court enjoined the patent holder from proceeding with the Florida case until the New York case ended. The Second Circuit affirmed for two reasons. The New York case "was the first suit brought, and absent the showing of balance of convenience in favor of the second action, it should have priority." *Id.* (citations omitted). Additionally, the New York case featured the parties needed for full adjudication of the patent issues—the patent holder as well as the manufacturer using the patent, as opposed to mere customers of that manufacturer.[1] Essentially the same result came about in *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952), in which the Supreme Court affirmed an injunction barring a manufacturer from seeking a declaratory judgment of non-infringement in District of Delaware after the patent holder sued for infringement in the Northern District of Illinois. The Supreme Court reasoned that "[t]he manufacturer who is charged with

---

[1] The desire to have the actual parties needed for full adjudication of relevant issues would give rise to the "customer action" exception to the rule of priority that became known as the first-filed rule.

infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity.  He is given an equal start in the race to the courthouse, not a headstart."  *Id.* at 185.

Two other patent cases deviated from the above pattern for specific reasons.  In *Joseph Bancroft & Sons Co. v. Spunize Co. of Am.*, 268 F.2d 522 (2d Cir. 1959), the Second Circuit allowed a non-infringement declaratory judgment action to proceed in the District of Connecticut even though it followed an infringement suit in the Middle District of North Carolina.  The Second Circuit let both cases proceed simultaneously because the parties were different—the North Carolina case featured a patent holder suing an alleged infringer for acts committed only in that district; while the Connecticut case featured the patent holder being sued by a holder of different patents that had licensing agreements with companies including the North Carolina alleged infringer.  *See id.* at 524. The difference in parties meant that neither case directly attacked the other.  The "customer action" principle from *Remington* gave priority to the second case in *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2d Cir. 1969).  In *Gluckin*, a patent holder first sued a customer of an allegedly infringing manufacturer in the Northern District of Georgia.  The second action, filed in the Southern District of New York, featured the manufacturer suing the patent holder

16

for declaratory judgment. The Second Circuit affirmed an injunction restraining the patent holder from proceeding in Georgia. After considering the balance of convenience to the parties, the Second Circuit reasoned that "[t]he whole of the war and all the parties to it are in the Southern District of New York. [Customer], the defendant in the Georgia action, has consented to be made a party here and is amenable to process here as well. All the litigants involved have offices and principal places of business in New York City. Most of the witnesses whose testimony is relevant reside in the New York City area. [Customer] must look to [Manufacturer] to supply evidence in its defense in the Georgia action. All counsel are from New York and the convenience of the major witnesses would unquestionably be better served by a New York venue." *Id.* at 180 (citation omitted).

About a decade later, courts appear to have started applying the first-filed rule to subject matter other than patents. Even then, however, courts still required reciprocal or mirror-image cases that directly attacked each other. In *Horn & Hardart Co. v. Burger King Corp.*, 476 F. Supp. 1058 (S.D.N.Y. 1979), a Burger King franchisee sued Burger King in the Southern District of New York for antitrust violations with respect to its franchise agreement. Just 2-1/2 hours later, Burger King sued the franchisee in the Southern District of Florida to enforce the same provisions of the franchise agreement under attack in New York as

17

unlawful restraints of trade.  The New York court issued a permanent injunction barring Burger King from proceeding with the Florida case.  "The primary issue in both courts would be whether Burger King could lawfully impose such restraints and exact such penalties.  It necessarily follows that if both cases were to go forward there would be a danger of inconsistent results and a duplication of judicial effort."  *Id.* at 1060.  In *Motion Picture Lab. Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.*, 804 F.2d 16 (2d Cir. 1986), an employer filed suit first in the Middle District of Florida to vacate an arbitration award of severance pay for union employees.  A few months later, the union filed suit in the Southern District of New York to confirm the arbitration award.  The New York court went ahead and confirmed the arbitration award, but the Second Circuit reversed with instructions to dismiss.  The Second Circuit gave the Florida case priority because "when the union filed suit in New York, the *essentially identical action* was already underway in Florida."  *Id.* at 19 (emphasis added). The Second Circuit had two reasons to uphold the priority of the Florida case. "First, the balance of convenience in this matter weighs overwhelmingly in favor of the Florida action, as the parties here have absolutely no ties to the Southern District of New York. Second, the chief 'special circumstance' we have noted is our interest in discouraging forum shopping."  *Id.* (citations omitted).  In *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989), the reciprocal

18

cases were a case filed in the Western District of Oklahoma for rescission of a loan agreement and two later cases filed in the Southern District of New York to enforce payment of promissory notes connected to the loan agreement. The Second Circuit affirmed dismissal of the New York cases in favor of the Oklahoma case. The Second Circuit found that the Oklahoma and New York cases directly competed with each other and that neither special circumstances nor the balance of conveniences upset the priority of the Oklahoma case. *See id.* at 79–80. In contrast, where a Chapter 11 bankruptcy did not directly compete with a case alleging environmental violations, and where the cases featured different parties, the Second Circuit did not apply the first-filed rule. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992).

Again, the Court does not intend to represent the above cases as an all-encompassing history of the first-filed rule. These cases are major cases in the history of the doctrine, though, and they allow the Court to discern several principles concerning the first-filed rule. The first-filed rule is a practical rule of equity that evolved in response to reciprocal cases that otherwise have proper jurisdiction and venue. Any cases subject to the rule must actually be reciprocal or be competing mirror images of each other. That is, the cases have to look as if the claims and counterclaims, or claims and affirmative defenses, that might normally appear in a single case had been split up and sent to different venues.

19

The exceptions to the first-filed rule for special circumstances and a balance of convenience demonstrate that "the first-filed rule does not constitute an invariable mandate.  The inquiry still requires selection of the more appropriate forum, since the first-filed rule is only a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal quotation marks and citations omitted).  Finally, while the general abstention doctrine is well developed, this Court is not aware of any appellate cases nationwide that applied the first-filed rule to an FLSA collective action.

The history and principles behind the first-filed rule give the Court guidance in determining the rule's applicability to Kmart's motion.  The New Jersey Case and this case are not rivals.  The cases do not feature identical or nearly identical parties racing to their preferred courthouses to obtain a favorable ruling before the other side does.  The claims that Hautur and Gurnish make here are not the mirror image of any claims that Kmart is making in the New Jersey Case.  Inversely, Kmart is not making any argument here that would attack the claims of the plaintiffs in the New Jersey Case.  The situation before the Court thus bears more of a resemblance to the ordinary situation of a tort defendant facing potential liability from multiple claimants in multiple places.  *See generally, e.g., In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*

*Products Liab. Litig.*, 704 F. Supp. 2d 1379  (J.P.M.L. 2010).  The proposed class in this case may or may not overlap with the conditional class in the New Jersey Case.  (*Compare* Dkt. No. 1 at 1–2 ("Plaintiffs allege on behalf of themselves and other current and former Hardlines and Softlines Assistant Managers ('Assistants'), employed by Defendant in the United States at any time during the three years prior to the filing of this action and the date of final judgment in this action (the 'Collective Action Period'), who elect to opt into this action . . . .") *with* Dkt. No. 12 at 17 ("[The New Jersey Case] involves FLSA claimants who joined prior to December 20, 2014, while this case, should it be conditionally certified, would allow those employees who started work for Kmart *after* the notice went out in [the New Jersey Case], to adjudicate their claims.").)[2]  There is a chance that some issues will be common to both cases, in spite of Hautur and Gurnish's suggestion that Kmart should have assessed every employee individually before classifying them as hourly or exempt.  (*See* Dkt. No. 1 at 8 ¶ 41.)  *But see, e.g., Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012) (affirming a denial of FLSA class certification where "the putative class members worked in 180 different stores in 33 states throughout the country and for 70 different contractors and subcontractors.  The individuals worked varying hours and for different wages depending on the contractor.") (internal quotation marks and

---

[2] By the fact that Judge Thompson did not approve the final notice and consent form in the New Jersey Case until September 23, 2014, notice to potential class members in the New Jersey Case could not have issued before then.  (*See* N.J. Case Dkt. No. 87.)

citation omitted).  Overlap of issues is a known problem in collective actions and other mass torts, though, and mechanisms have evolved to address the problem when necessary.  Between a stay of this case, a transfer of this case to New Jersey, and a notice to the Judicial Panel on Multidistrict Litigation—actions that neither party has requested or briefed so far—there are ways to coordinate the New Jersey Case and this case as the need arises.  Dismissing this case altogether simply because Kmart does not want to be sued twice does not serve the purpose of the first-filed rule and is too drastic a remedy.  The Court thus finds that the first-filed rule does not apply to FLSA collective actions, subject to any future appellate guidance on the issue.  The Court accordingly recommends denying Kmart's motion to the extent that it rests on the first-filed rule as a basis for dismissal.

### C. Does the FLSA Prohibit a Second Collective Action?

Even without the first-filed rule, there is another potential ground for dismissal that Kmart does not discuss directly but that Hautur and Gurnish address briefly in their motion papers.  If for any reason the FLSA does not allow two or more simultaneous collective actions against the same defendant then something would have to happen to this case to satisfy the statutory prohibition.  Does the FLSA in fact have such a prohibition?

Answering the above question requires reviewing how the FLSA affects this case.  The FLSA prohibits hourly employees from working more than 40 hours per week without receiving overtime pay.  29 U.S.C. § 207(a)(1) (Westlaw 2015).  Section 215(a)(2) formally prohibits violations of Section 207.  The civil penalty and enforcement provision comes in Section 216.  "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . . An action to recover the liability prescribed . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  *Id.* § 216(b).  Congress added the preceding sentence to the FLSA by amendment in 1947, 61 Stat. 84, 87 (Jan. 3, 1947), and that amendment gave the FLSA its distinctive "opt-in" requirement and made its group actions technically collective actions.  "A 'collective action' differs from a class action.  In a class action, once the district court certifies a class under Rule 23, all class members are bound by the

23

judgment unless they opt *out of* the suit.  By contrast, in a collective action each plaintiff must opt *into* the suit by giving his consent in writing.  As result, unlike a class action, only those plaintiffs who expressly join the collective action are bound by its results."  *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (internal quotation and editorial marks and citations omitted).  The difference between the FLSA and Rule 23 has not stopped plaintiffs from maintaining a federal FLSA claim and supplemental Rule 23 state claims within the same case.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 249 (2d Cir. 2011) ("[W]e agree with the Seventh Circuit that while there may in some cases be exceptional circumstances or compelling reasons for declining jurisdiction, the 'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction under section 1367(c)(4).") (internal quotation marks and citations omitted).  Allowing FLSA and Rule 23 classes within the same "hybrid" case arguably promotes the policy goals of the FLSA.  "Awareness of the FRCP 23 action pending with the FLSA claim allows for a more emphatic assertion of employee wage rights and active participation in the litigation without fear of retaliation.  Allowing for such procedural choices is congruent with the FLSA's remedial objective to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-

24

being of workers."  Mikel J. Sporer, *In and Out: Reconciling "Inherently Incompatible" Group Action Procedures Under FLSA and Rule 23*, 28 ABA J. Lab. & Emp. L. 367, 381 (2013) (citation omitted).

If plaintiffs can certify mixed FLSA and Rule 23 classes within the same case then would allowing multiple FLSA classes across different cases be too much of a stretch?  In the absence of either explicit statutory language to that effect or appellate guidance directly on point, the answer would appear to be no. Proposing two classes under the same statute presents no conflicts with Rule 23 and no concerns about supplemental jurisdiction.  As the Court mentioned above when discussing the first-filed rule, maintaining multiple FLSA collective actions might require stays, transfers, or multidistrict proceedings, but the FLSA already contemplates the need for those management techniques since failure to opt into a collective action has no preclusive effect.  "Unlike Rule 23, the opt-in provision of section 213 provides for no legal effect on those parties who choose not to participate . . . . As each plaintiff could, therefore, file his or her own suit, judicial efficiency demands that, if possible, these individual suits be consolidated." *Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999); *accord Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 598 (E.D. La. 2013) ("Had Congress wished to limit the number of collective actions that could be brought against an employer, it could have said that only 'one

25

action to recover' may be maintained on behalf of a group of employees.  It did not do so.  The only statutory restrictions on collective actions are that all defendants must be an 'employer,' all plaintiffs must file written consent forms to participate, and the action must be filed within the applicable statute of limitations."); *Fairley v. Knights' Marine & Indus. Servs., Inc.*, No. 1:15CV47-LG-RHW, 2015 WL 3450797, at *3 (S.D. Miss. May 29, 2015) ("The Court is not required to take any action simply because there are two lawsuits asserting the same FLSA rights, although developments may make consolidation desirable at some point.").

Under these circumstances, the Court finds no statutory prohibition in the FLSA that would prevent Hautur and Gurnish from proceeding here while the New Jersey Case runs its course.  The Court thus recommends denying Kmart's motion to the extent that it argues or suggests otherwise.

### D. Interlocutory Appeal to the Second Circuit

Although the Court is recommending denial of Kmart's motion, it recognizes that it is doing so with little direct appellate guidance for the precise issues presented.  This Court also recognizes that some of its sister courts have grappled with the same issues and have reached different conclusions.  This Court respectfully disagrees with cases such as *Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401 (E.D.N.Y. 2013) and *Pippins v. KPMG LLP*, No. 11 CIV.

26

0377 CM, 2011 WL 1143010 (S.D.N.Y. Mar. 21, 2011), which appear to modify the first-filed rule to eliminate the need for reciprocity and to cover any second case against the same defendant by any plaintiffs with similar claims. Nonetheless, the Court acknowledges that the Second Circuit reasonably could choose to take the first-filed rule in the direction of *Castillo* and *Pippins*. The Court also believes that direct Second Circuit guidance on the issues presented here could lead to immediate termination of this case and could provide important clarification for future litigants who find themselves in Hautur and Gurnish's situation. *Cf. Burns v. Equitable Life Assur. Soc. of U.S.*, 696 F.2d 21, 23 (2d Cir. 1982) (deciding an interlocutory appeal of an issue of statutory interpretation).

Accordingly, and pursuant to 28 U.S.C. § 1292(b), the Court respectfully recommends certification of the following issues for interlocutory appeal to the Second Circuit:

1)  Whether the "first-filed rule" applies to collective actions under the Fair Labor Standards Act; and

2)  Whether the Fair Labor Standards Act prohibits collective actions in different districts against the same defendant.

Pursuant to Section 1292(b), Kmart would have the responsibility to make the appropriate application to the Second Circuit within 10 days, if Judge Arcara

adopts this recommendation.  Also pursuant to Section 1292(b), the Court is not recommending a stay of proceedings pending the outcome of any interlocutory appeal.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends denying Kmart's motion (Dkt. No. 9).  The Court also recommends the certification of issues for interlocutory appeal as explained above, without a stay of proceedings.

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

SO ORDERED.

__/s Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: September 22, 2015

28